**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BAYER HEALTHCARE PHARMACEUTICALS INC.; BAYER PHARMA AKTIENGESELLSCHAFT; and BAYER AKTIENGESELLSCHAFT,<br><br>Plaintiffs,<br><br>v.<br><br>SABA ILAC SANAYI VE TICARET A. S.,<br><br>Defendant. | Case No. __________ |

**COMPLAINT FOR PATENT INFRINGEMENT AND FOR DECLARATORY JUDGMENT OF PATENT INFRINGEMENT AND NO PATENT INVALIDITY**

Plaintiffs Bayer HealthCare Pharmaceuticals Inc., Bayer Pharma AG ("BHP AG"), and Bayer Aktiengesellschaft ("Bayer AG") (collectively, "Bayer" or "Plaintiffs"), for their Complaint against Defendant Saba Ilac Sanayi ve Ticaret A. S. ("SABA" or "Defendant"), hereby allege as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement, declaratory judgment of patent infringement, and declaratory judgment of no invalidity of United States Patent No. 8,436,180 (the "'180 Patent"). This action arises out of SABA filing or causing to be filed Abbreviated New Drug Application No. 220708 ("SABA's ANDA") with the United States Food and Drug Administration ("FDA") for approval to market a generic version of Bayer's KERENDIA®, (finerenone) drug product. Through SABA's ANDA, SABA seeks approval to market a generic version of the pharmaceutical product KERENDIA® before the expiration of the '180 Patent. This action also arises out of SABA's current and/or imminent manufacture, use, sale, offer to sell within the United States, and/or importation to the United States of SABA's generic version of the

pharmaceutical product KERENDIA®. A true and correct copy of the ’180 Patent is attached as Exhibit A. Plaintiffs seek injunctive relief precluding infringement, attorneys’ fees, costs and expenses, and any other relief the Court deems just and proper.[1]

**THE PARTIES**

2. Plaintiff Bayer HealthCare Pharmaceuticals Inc. is a corporation organized and existing under the laws of the State of Delaware and has a principal place of business at 100 Bayer Blvd., Whippany, NJ 07981.

3. Plaintiff BHP AG is a corporation organized and existing under the laws of Germany and has a principal place of business at Müllerstr. 178, 13353 Berlin, Germany.

4. Plaintiff Bayer AG is a corporation organized and existing under the laws of Germany and has a principal place of business at Kaiser-Wilhelm-Allee 1, 51368 Leverkusen, Germany. Bayer HealthCare Pharmaceuticals Inc. and BHP AG are wholly owned subsidiaries of Bayer AG.

5. Bayer is a pioneering pharmaceutical company that aims to develop therapies and treatments that can help prevent, treat, or potentially cure diseases. Bayer is committed to the discovery and development of new therapies that improve the health of millions of patients around the world. Guided by science and Bayer’s commitment to patients, Bayer strives to address the individual needs of patients in order to achieve improved and sustainable health for all. By unlocking previously undruggable targets and applying breakthrough technologies, Bayer is

[1] Bayer has a separate action regarding SABA’s infringement of U.S. Patent No. RE49,826 pending in this District, which is also related to SABA’s ANDA for approval to market a generic version of KERENDIA®. *See Bayer HealthCare Pharmaceuticals Inc., et al. v. SABA Ilac Sanayi ve Ticaret A. S.*, C.A. No. 25-1282-JLH (D. Del.) (consolidated as C.A. No. 25-1246-JLH with C.A. Nos. 25-1247-JLH, 25-1260-JLH, 25-1262-JLH, 25-1280-JLH, 25-1281-JLH, 25-1283-JLH, and 25-1299-JLH).

challenging the limitations of medical treatment. Through this approach, Bayer has become a global leader in treating and preventing cardiovascular disease.

6. On information and belief, Defendant SABA is a corporation organized and existing under the laws of Turkey, having a principal place of business at Halkali Merkez, Mah. Basin Ekspres Cad. No:1 34303, Kucukcekmece, Istanbul, Turkey.

7. On information and belief, Defendant SABA, directly or through one or more of its wholly-owned subsidiaries and/or agents, develops, manufactures, markets, distributes, imports, offers for sale, and/or sells generic versions of branded pharmaceutical products throughout the United States, including in Delaware.

8. On information and belief, SABA prepared and submitted SABA’s ANDA and continues to seek FDA approval of that application.

9. On information and belief, SABA intends to commercially manufacture, market, offer for sale, and sell the product described in SABA’s ANDA (“SABA’s ANDA Product”) throughout the United States, including in the State of Delaware, in the event the FDA approves SABA’s ANDA.

## JURISDICTION AND VENUE

10. This is a civil action for patent infringement and declaratory judgment of infringement and no invalidity of U.S. Patent No. 8,436,180. This action arises under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201–02, and 35 U.S.C. § 271.

12. Venue is proper in this Court as to SABA under 28 U.S.C. § 1391(c)(3) because SABA is a foreign corporation and may be sued in any judicial district in the United States where SABA is subject to the court's personal jurisdiction. For reasons set forth below, SABA is subject to personal jurisdiction in this district.

13. On information and belief, SABA consents to jurisdiction in Delaware.

14. This Court has personal jurisdiction over SABA, and venue is proper as to SABA, at least because, upon information and belief, SABA: (1) has purposely availed itself of the privilege of doing business in Delaware, directly or indirectly, through its subsidiaries, agents, and/or alter egos; (2) maintains pervasive, continuous, and systematic contacts with Delaware, including the marketing, distribution, and/or sale of generic pharmaceutical products in Delaware; (3) derives substantial revenue from the sale of its products in Delaware; and (4) intends to, directly or indirectly through its subsidiaries, agents, and/or alter egos, market sell, or distribute SABA's ANDA Product for which it seeks approval under SABA's ANDA, including throughout Delaware.

15. This Court has personal jurisdiction over SABA for at least the additional reason that it has availed itself of the legal protections of Delaware by previously consenting to personal jurisdiction and asserting counterclaims in this Judicial District. *See, e.g.*, *Bayer HealthCare Pharmaceuticals Inc.*, *et al. v. SABA Ilac Sanayi ve Ticaret A. S.*, C.A. No. 25-1282-JLH (D. Del.), *Arbor Pharmaceuticals, LLC, et al. v. Saba Ilac Sanayi ve Ticaret AS*, C.A. No. 22-353-MN (D. Del.).

16. Alternatively, this Court may exercise jurisdiction over SABA pursuant to Fed. R. Civ. P. 4(k)(2) because (1) Bayer's claims arise under federal law; (2) SABA is a foreign defendant not subject to personal jurisdiction in any state's court of general jurisdiction; and (3)

SABA has sufficient contacts with the United States as a whole, including but not limited to preparing and submitting numerous ANDAs to the FDA and manufacturing, importing, offering to sell, or selling generic pharmaceutical products distributed throughout the United States, such that this Court's exercise of jurisdiction over SABA satisfies due process.

17. On information and belief, SABA filed or caused to be filed SABA's ANDA with the FDA.

18. On information and belief, SABA maintains distribution channels for the commercial supply of generic drugs, including on information and belief SABA's ANDA Product, throughout the United States, including in Delaware.

**BAYER'S APPROVED KERENDIA® AND THE '180 PATENT**

19. Bayer HealthCare Pharmaceuticals Inc. holds New Drug Application ("NDA") No. 215341 on KERENDIA®, which the FDA approved on July 9, 2021. The FDA also granted five years of regulatory exclusivity on KERENDIA® for a new chemical entity pursuant to 21 C.F.R. § 314.108, which regulatory exclusivity expired on July 9, 2026. Bayer markets and sells products that are the subject of NDA No. 215341 in the United States under the brand name KERENDIA®.

20. KERENDIA® (finerenone) is a non-steroidal mineralocorticoid receptor antagonist (nsMRA) indicated to reduce the risk of: sustained estimated glomerular filtration rate (eGFR) decline, end stage kidney disease, cardiovascular death, non-fatal myocardial infarction, and hospitalization for heart failure in adult patients with chronic kidney disease (CKD) associated with type 2 diabetes (T2DM); and cardiovascular death, hospitalization for heart failure, and urgent heart failure visits in adult patients with heart failure with left ventricular ejection fraction (LVEF)

≥40%. A true and correct copy of the prescribing information for KERENDIA® is attached as Exhibit B.

21. The prescribing information for KERENDIA® instructs that each KERENDIA® tablet contains "10 mg, 20 mg, or 40 mg of finerenone" which "is a white to yellow crystalline powder." Exhibit B at Section 11.

22. Pursuant to 21 U.S.C. § 355(b)(1), the '180 Patent is listed in the FDA's publication titled Approved Drug Products with Therapeutic Equivalence Evaluations (commonly referred to as the "Orange Book") as covering KERENDIA®.

23. The '180 Patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on May 7, 2013, and is titled "Substituted-4-aryl-1,4-dihydro-1,6-naphthyridnamides and use thereof." Exhibit A. The '180 Patent was filed as U.S. Application No. 12/526,951, having a 35 U.S.C. §371 filing date of January 12, 2010. Exhibit A. The '180 Patent claims priority to German Patent Application No. 102007009494, filed February 27, 2007. Exhibit A. The '180 Patent will expire on August 26, 2033.

24. BHP AG is the assignee of the '180 Patent.

25. Bayer AG holds an exclusive license to the '180 Patent.

## SABA'S ANDA AND NOTICE LETTER

26. On information and belief, SABA submitted its ANDA to the FDA under § 505(j) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)), seeking approval to engage in the commercial manufacture, use, offer for sale, or sale within the United States, and/or importation into the United States, of SABA's ANDA Product as a purported generic version of KERENDIA® before the expiration of the '180 Patent.

27. SABA sent Bayer a letter dated July 7, 2026 ("SABA's Paragraph IV Notice Letter") providing notice that SABA's ANDA contains a certification with respect to the Patent under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV Certification"). Bayer HealthCare Pharmaceuticals Inc. received SABA's Paragraph IV Notice Letter on July 9, 2026.

28. SABA's Paragraph IV Certification represents that SABA filed its ANDA seeking approval from the FDA to commercially manufacture, use, market, or sell its generic finerenone tablets, 10 mg and 20 mg, in the United States before the expiration of the '180 Patent.

29. SABA's Paragraph IV Notice Letter purported to contain "Confidential Detailed Factual And Legal Bases for [SABA's] Paragraph IV Certification that the U.S. Patent: 8,436,180 is Invalid, Unenforceable and/or Will Not Be Infringed" ("Detailed Statement").

30. SABA's purported Detailed Statement alleged that the claims of the '180 Patent are invalid as anticipated and/or obvious over U.S. Patent No. 8,404,709 (the "'709 Patent); invalid under 35 U.S.C. § 112(a) and (b) for lack of written description, lack of enablement, and indefiniteness; and invalid for improper inventorship.

31. On information and belief, if the FDA approves SABA's ANDA, SABA will manufacture, offer for sale, or sell its ANDA Product within the United States, including within Delaware, or will import its ANDA Product into the United States, including Delaware.

32. On information and belief, if the FDA approves SABA's ANDA, SABA will actively induce or contribute to the manufacture, use, offer for sale, or sale of its ANDA Product.

33. Bayer is commencing this action within 45 days of the date of receipt of SABA's Paragraph IV Notice Letter in accordance with the time frame for filing such a suit established by the Hatch-Waxman Act, 21 U.S.C. § 355(j)(5)(B)(iii).

**FIRST CAUSE OF ACTION**
**INFRINGEMENT OF THE ’180 PATENT**

34. The allegations of paragraphs 1-33 above are repeated and re-alleged as if set forth fully herein.

35. On information and belief, SABA has submitted or caused the submission of SABA’s ANDA to FDA, and continues to seek FDA approval of the SABA ANDA.

36. SABA has infringed the ’180 Patent under 35 U.S.C. § 271(e)(2)(A) by submitting SABA’s ANDA with a Paragraph IV certification and seeking FDA approval of SABA’s ANDA before the expiration of the ’180 Patent.

37. SABA is liable for direct infringement of the ’180 Patent under § 271(e)(2)(A) because, on information and belief, SABA actively and knowingly caused to be submitted, assisted with, participated in, contributed to, and/or directed the submission of SABA’s ANDA and its accompanying Paragraph IV Certification directed to the ’180 Patent to the FDA. On information and belief, SABA’s ANDA seeks FDA approval to engage in the commercial manufacture, use, or sale of a product claimed in the ’180 Patent.

38. The ’180 Patent claims, *inter alia*, finerenone and thus SABA will necessarily infringe one or more claims of the ’180 patent by making, using, offering for sale and selling its ANDA Product, which contains finerenone.

39. On information and belief, if SABA’s ANDA is approved, SABA and its affiliates will immediately make, sell, offer for sale, or otherwise distribute SABA’s ANDA Product in the United States, including in Delaware, thereby directly infringing one or more claims of the ’180 Patent.

40. Unless enjoined by this Court, upon approval of ANDA No. 220708, SABA will make, use, offer to sell, or sell SABA’s ANDA Product within the United States, or will import

SABA's ANDA Product into the United States, and will there actively contribute to the infringement of and/or induce the infringement of one or more claims of the '180 Patent.

41. On information and belief, SABA has acted with full knowledge of the '180 Patent and without a reasonable basis for believing that the manufacture, use, or sale of its generic product would not infringe the '180 Patent or that the '180 Patent is invalid and, likewise, lacks any reasonable basis for believing that its generic product is a staple article or commodity of commerce suitable for substantial non-infringing use.

42. SABA's Detailed Statement in SABA's Paragraph IV Notice Letter lacks sufficient basis to show that SABA's ANDA Product will not infringe, contribute to the infringement of, or induce the infringement of the '180 Patent, and lacks a sufficient basis to allege that the '180 Patent is invalid.

43. Bayer will be irreparably harmed if SABA is not enjoined from infringing, and from actively inducing or contributing to the infringement of the '180 Patent. Bayer does not have an adequate remedy at law, and considering the balance of hardships between Bayer and SABA, a remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

44. The submission of SABA's ANDA to obtain FDA approval to engage in the commercial manufacture, use, offer for sale, sale, and/or import into the United States of SABA's ANDA Product before the expiration of the '180 Patent also entitles Bayer to fees under 35 USC § 271(e)(4) and § 285.

**SECOND CAUSE OF ACTION**
**DECLARATORY JUDGMENT OF INFRINGEMENT OF THE '180 PATENT**

45. The allegations of paragraphs 1-44 above are repeated and re-alleged as if set forth fully herein.

46. Bayer's claims also arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

47. The '180 Patent claims, *inter alia*, finerenone and thus SABA will necessarily infringe one or more claims of the '180 patent by making, using, offering for sale and selling its ANDA Product, which contains finerenone.

48. On information and belief, if SABA's ANDA is approved, SABA and its affiliates will immediately make, sell, offer for sale, and/or import SABA's ANDA Product in the United States, including in Delaware, thereby directly infringing one or more claims of the '180 Patent under at least 35 U.S.C. § 271(a). Additionally, on information and belief, health care professionals or patients who use SABA's ANDA product will directly infringe one or more claims of the '180 Patent under one or more of 35 U.S.C. §§ 271(a), (f), and (g).

49. On information and belief, SABA knows and intends that health care professionals or patients will use SABA's ANDA Product in accordance with the labeling sought by SABA's ANDA and SABA will therefore contribute to the infringement of and/or induce the infringement of one or more claims of the '180 Patent under one or more of 35 U.S.C. §§ 271(b) and (c).

50. As a result of the foregoing facts, there is a real, substantial, and continuing justiciable controversy between Bayer and SABA concerning liability for the infringement of the '180 Patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

51. Bayer will be irreparably harmed if SABA is not enjoined from infringing, and from actively inducing or contributing to the infringement of the '180 Patent. Bayer does not have an adequate remedy at law, and considering the balance of hardships between Bayer and SABA, a

remedy in equity is warranted. Further, the public interest would not be disserved by the entry of a permanent injunction.

52. This case is exceptional, and Bayer is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**THIRD CAUSE OF ACTION**
**DECLARATORY JUDGMENT OF NO INVALIDITY OF THE '180 PATENT UNDER 35 U.S.C §§ 102 AND/OR 103**

53. The allegations of paragraphs 1-52 above are repeated and re-alleged as if set forth fully herein.

54. SABA's Paragraph IV Notice Letter alleges, *inter alia*, that the claims of the '180 Patent are not eligible for patent protection under 35 U.S.C. §§ 102 and 103.

55. As a result of the foregoing facts, there is a real, substantial, and continuing justiciable controversy between Bayer and SABA concerning the validity of the '180 Patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

56. The 35 U.S.C. §§ 102-103 (prior art) invalidity allegations contained in SABA's Paragraph IV Notice Letter are solely based on the '709 Patent.

57. The '180 Patent claims priority to German Patent Application No. 102007009494, filed February 27, 2007.

58. The '180 Patent has an effective filing date prior to March 16, 2013.

59. The '180 Patent is subject to the Pre-America Invents Act ("Pre-AIA") version of 35 U.S.C. § 102 (*i.e.*, Pre-AIA 35 U.S.C. § 102).

60. The '709 Patent was filed as U.S. Application No. 12/303,719.

61. U.S. Application No. 12/303,719 has a 35 U.S.C. § 371 filing date of June 28, 2010.

62. U.S. Application No. 12/303,719 published as U.S. Publication No. 2010/0305052 on December 2, 2010.

63. The ’709 Patent was not patented or described in a printed publication prior to February 27, 2007.

64. The ’709 Patent claims foreign priority to German Patent Application No. 102006026585.8 and priority to Patent Cooperation Treaty Application No. PCT/EP2007/004865.

65. German Patent Application No. 102006026585.8 was not filed in the United States.

66. German Patent Application No. 102006026585.8 published as German Publication No. DE102006026585A1 on December 13, 2007.

67. German Patent Application No. 102006026585.8 was not described in a printed publication prior to February 27, 2007.

68. No patent granted on German Patent Application No. 102006026585.8 in the United States or a foreign country prior to February 27, 2007.

69. German Patent Application No. 102006026585.8 is not an international application filed under the treaty defined in 35 U.S.C. § 351(a).

70. German Patent Application No. 102006026585.8 is not an international application filed under the treaty defined in 35 U.S.C. § 351(a) that designated the United States for national stage entry.

71. German Patent Application No. 102006026585.8 did not publish in the English language.

72. German Patent Application No. 102006026585.8 did not publish under Article 21(2) of the Patent Cooperation Treaty in the English language.

73. Patent Cooperation Treaty Application No. PCT/EP2007/004865 published on December 13, 2007 as Patent Cooperation Treaty Publication No. WO2007/140934 on December 13, 2007.

74. Patent Cooperation Treaty Application No. PCT/EP2007/004865 was not filed in the United States.

75. Patent Cooperation Treaty Application No. PCT/EP2007/004865 was not described in a printed publication prior to February 27, 2007.

76. No patent granted on Patent Cooperation Treaty Application No. PCT/EP2007/004865 in the United States or a foreign country prior to February 27, 2007.

77. Patent Cooperation Treaty Application No. PCT/EP2007/004865 did not publish in the English language.

78. Patent Cooperation Treaty Application No. PCT/EP2007/004865 did not publish under Article 21(2) of the Patent Cooperation Treaty in the English language.

79. The ’709 Patent does not qualify as prior art to the ’180 Patent under Pre-AIA 35 U.S.C. § 102.

80. The ’709 Patent is not prior art to the ’180 Patent.

81. SABA’s Paragraph IV Notice Letter does not contain any good faith basis to allege that the claims of the ’180 Patent are invalid under 35 U.S.C. §§ 102 and 103.

82. This case is exceptional, and Bayer is entitled to an award of attorneys’ fees under 35 U.S.C. § 285.

**FOURTH CAUSE OF ACTION**
**DECLARATORY JUDGMENT OF NO INVALIDITY OF THE ’180 PATENT UNDER 35 U.S.C §§ 112(a), 112(b), OR IMPROPER INVENTORSHIP**

83. The allegations of paragraphs 1-82 above are repeated and re-alleged as if set forth fully herein.

84. SABA's Paragraph IV Notice Letter alleges that the claims of the '180 Patent are not eligible for patent protection under 35 U.S.C. §§ 112(a), 112(b), and for improper inventorship.

85. As a result of the foregoing facts, there is a real, substantial, and continuing justiciable controversy between Bayer and SABA concerning the validity of the '180 Patent for which this Court may grant declaratory relief consistent with Article III of the United States Constitution.

86. The 35 U.S.C. § 112(a) (written description and enablement) invalidity allegations contained in SABA's Paragraph IV Notice Letter are based on proposed claims presented during prosecution of the '180 Patent that did not issue.

87. The 35 U.S.C. § 112(a) (written description and enablement) invalidity allegations contained in SABA's Paragraph IV Notice Letter are not directed to issued claims in the '180 Patent.

88. The 35 U.S.C. § 112(b) (indefiniteness) invalidity allegations contained in SABA's Paragraph IV Notice Letter are based on proposed claims presented during prosecution of the '180 Patent that did not issue.

89. The 35 U.S.C. § 112(b) (indefiniteness) invalidity allegations contained in SABA's Paragraph IV Notice Letter are not directed to the issued claims in the '180 Patent.

90. The improper inventorship allegations contained in SABA's Paragraph IV Notice Letter do not allege which specific individuals were purportedly omitted as inventors from the '180 Patent.

91. The improper inventorship allegations contained in SABA's Paragraph IV Notice Letter do not allege what the inventive contribution from each alleged omitted inventor from the '180 Patent was.

92. SABA's Paragraph IV Notice Letter does not contain any good faith basis to allege that the claims of the '180 Patent are invalid under 35 U.S.C. §§ 112(a), 112(b), or for improper inventorship.

93. This case is exceptional, and Bayer is entitled to an award of attorneys' fees under 35 U.S.C. § 285.

**PRAYER FOR RELIEF**

WHEREFORE, Bayer requests that the Court grant the following relief:

A. A judgment that SABA infringes the '180 Patent under 35 U.S.C. § 271(e)(2)(A);

B. A declaratory judgment that SABA's manufacture, use, offer for sale, or sale of SABA's ANDA Product in the United States, or importation into the United States, will directly infringe one or more claims of the '180 Patent under 35 U.S.C. §§ 271(a), (f), and/or (g);

C. A declaratory judgment that SABA's manufacture, use, offer for sale, or sale of SABA's ANDA Product in the United States, or importation into the United States, will induce and/or contribute to the infringement of one or more claims of the '180 Patent under 35 U.S.C. §§ 271 (b) and/or (c);

D. A judgment and declaratory judgment that SABA's infringement of the '180 Patent is, and will be, willful;

E. A declaratory judgment that the '180 Patent is not invalid under 35 U.S.C. §§ 102 or 103.

F. A declaratory judgment that the '180 Patent is not invalid under 35 U.S.C. §§ 112(a), 112(b), or for improper inventorship;

G. A permanent injunction pursuant to 35 U.S.C. §§ 271(e)(4)(B) and/or 283 restraining and enjoining SABA, its affiliates and subsidiaries, and all persons or entities acting in

concert with SABA from commercially manufacturing, using, offering for sale, selling, or importing any product that infringes the ’180 Patent by the commercial manufacture, use, provision, offer for sale, or sale within the United States, and/or importation into the United States, including SABA’s ANDA Product described in ANDA No. 220708;

H. An order pursuant to 35 U.S.C. § 271(e)(4)(A) decreeing that the effective date of any FDA approval of SABA’s ANDA No. 220708 be a date that is not earlier than the expiration date of the ’180 Patent, or any later expiration of any patent term extension or exclusivity for the ’180 Patent to which Bayer is or becomes entitled;

I. A declaration under 28 U.S.C. § 2201 that if SABA, its officers, agents, servants, employees, licensees, representatives, and attorneys, and any other persons acting or attempting to act in active concert or participation with SABA or acting on its behalf, engages in the commercial manufacture, use, offer for sale, sale and/or importation of the product described in ANDA No. 220708, it will constitute an act of direct and/or indirect infringement of the ’180 Patent;

J. An award of damages or other relief pursuant to 35 U.S.C. § 271(e)(4)(C) to the extent SABA commercially manufactures, uses, provides, offers to sell, or sells within the United States, or imports into the United States any product that infringes or induces or contributes to the infringement of the ’180 Patent within the United States before the expiration of the ’180 Patent, including any later expiration of any patent term extension or exclusivity for the’180 Patent to which Bayer is or becomes entitled, and that any such monetary relief be awarded to Bayer with prejudgment interest;

K. The entry of judgment declaring that SABA’s acts render this case an exceptional case, and awarding Bayer its attorneys’ fees pursuant to 35 U.S.C. §§ 271(e)(4) and 285;

L. An award of Bayer’s costs and expenses in this action; and

M. Such other and further relief as the Court may deem just and proper.

DATED: August 21, 2026

OF COUNSEL:

Deborah Fishman
Carson D. Anderson
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real,
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
(650) 319-4500
deborah.fishman@arnoldporter.com
carson.anderson@arnoldporter.com

Jeremy Cobb
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
(202) 942-5000
jeremy.cobb@arnoldporter.com

Abigail Struthers
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
abigail.struthers@arnoldporter.com

MCCARTER & ENGLISH, LLP

*<u>/s/ Daniel M. Silver</u>*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs*
*Bayer HealthCare Pharmaceuticals Inc.*
*Bayer Pharma Aktiengesellschaft*
*Bayer Aktiengesellschaft*